KING v. RAILROAD.

(Filed February 27, 1906).

*Contract of Employment—Rules of Employer.*

1. The following telegram sent by defendant's general road master to plaintiff "Can offer you extra force at $65 per month. Will want you at once to ditch D. &. N. Road and R. & G. Answer quick. Job will last all the year," constituted an offer of employment for the remainder of the year, which became binding upon acceptance.

2. The above special contract of employment was not affected by the rules of defendant company, known to plaintiff, that its servants are employed by the month subject to be discharged at its will.

140—28

ACTION by J. W. King against Seaboard Air Line Railway, heard by *Judge E. B. Jones* and a jury, at the March Term, 1905, of the Superior Court of HALIFAX.

This was an action to recover damages for breach of contract of hiring. The following issues were submitted to the jury without objection, and answered as follows: 1. Was the contract of employment for the balance of the year? Yes. 2. Was the contract of employment for an indefinite period leaving to the parties the right to sever their connection at will? No. 3. Is defendant indebted to plaintiff, if so, in what amount? $440, with interest from January, 1904, to date, March 14, 1905. The plaintiff's action is founded on the following telegram sent by J. T. Elmore, general road master of the defendant: "Henderson, N. C., April 2, 1903. J. W. King: Can offer you extra force at $65 per month. Will want you at once to ditch D. & N. Road and R. & G. Answer quick. Job will last all the year. J. T. Elmore."

There was evidence tending to prove that the plaintiff accepted the offer at once; that he was placed in charge of the work and at the end of eleven days discharged. From the judgment rendered, the defendant appealed.

*Claude Kitchin, E. L. Travis* and *W. E. Daniel* for the plaintiff.

*Day, Bell & Dunn* and *Murray Allen* for the defendant.

BROWN, J. There are a large number of exceptions presented in the record, but since the defendant deems only one worthy of notice, in the brief, we deem it unnecessary to discuss the others, although we have carefully considered them and find them to be without merit. The defendant contends that, first, the telegram to King did not constitute an offer of employment that would become binding upon acceptance; second, it was not an offer of employment for a definite time; and third, if it was a binding offer, the court should have

read into it the rules of defendant company that employees are engaged to work by the month, subject to discharge at will.

The argument of counsel that by using the potential "can offer," Elmore did not make a positive offer of employment, but only intended to open negotiations, is entirely destroyed by the undisputed evidence that the plaintiff accepted the offer by wire, reported for duty, and was placed in charge of the work and prosecuted it for eleven days until discharged. The reasons for his discharge are given in the answer, as well as Elmore's letter to the plaintiff of April 23, 1903. There is evidence for the defendant tending to prove a different contract after the plaintiff reported for duty, but that evidence seems to have been discredited by the finding of the jury. The question was submitted to them to determine the duration of the employment and they have said it was for the remainder of the year, the burden being properly placed on the plaintiff to prove it.

A general or indefinite hiring is *prima facie* a hiring at will, and if the servant seek to make it out a yearly hiring, the burden is upon him to establish it by proof. Wood, Master & Servant (2 Ed.), sec. 136. In his charge upon this issue, His Honor instructed the jury that the language of the telegram indicated a contract for the remainder of the year, and that if they should find it was accepted by the plaintiff and no other agreement was afterwards substituted for it, they should answer the first issue "Yes." We are unable to place any other construction upon the written words of the telegram unless it be that the contract was to ditch the D. & N. Road, and that the employment was to last until that job was completed. That construction would not help the defendant, as there is no evidence that the work was completed before the expiration of the year. Counsel for the defendant rely upon *Edwards v. Railroad,* 121 N. C., 490, to sustain their construction of the words of the telegram, as indi-

cating a clear intent to hire by the month. We are unable to
see that the case supports their contention. The letter, in
the latter case, advised Edwards of his appointment as gen-
eral store keeper—"your salary will be $1,800 a year." Ed-
wards accepted and at once, about July 10, 1894, entered
upon the performance of his duties, and was paid $150 per
month until he was discharged January 1, 1896. The court
held that the contract was not specific as to the *term* of ser-
vice; that there was nothing on its face to justify the con-
struction that the employment was for a year, and that the
sum mentioned was merely the measure of compensation,
leaving the parties to sever their relations at will.

In the case before us, the compensation and term of ser-
vice are both plainly indicated, the one to be paid monthly,
the other to endure for the current year. The language is
sufficiently clear to justify a prudent man in so interpreting
it before accepting the offer. *Mining Co. v. Harris,* 24 Mich.,
115. It is contended that according to the rules of the de-
fendant its servants are employed by the month, subject to be
discharged at its will, and that the plaintiff knew this. There
is abundant evidence tending to prove the existence of such
a general rule in relation to the hiring of its regular em-
ployees. But this transaction does not appear on its face to be
the ordinary taking of a servant into the regular service of
the company and placing him upon its pay roll. It appears
to be more in the nature of a special contract to supervise a
certain piece of work until completed, accompanied by a
statement as to how long the service will be required. The
plaintiff had been section master and knew of the general
rule and custom of the defendant, but he also testified that he
had known the company before to make yearly contracts of
hire.

*Prima facie,* Elmore had the right to make the contract
with the plaintiff and there is nothing in the evidence to rebut
it. No rule book is in evidence containing any rule denying

such authority to a general road master. Elmore's jurisdiction was extensive, extending from Portsmouth to Raleigh, and over the D. & N. and other branch roads, so that he seems to be "one in authority" among the defendant's employees. There is evidence upon the part of the defendant which, if believed, fully justified the discharge of the plaintiff. All of it was contradicted by him. The contentions of both parties upon this feature of the case were fully presented by the judge below to the jury under the third issue. We find no vice in the instructions.

Upon review of the entire record the judgment must be
Affirmed.